UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMIE BADANISH, <br><br> Plaintiff, <br><br> v. <br><br> LAKE COUNTY GOVERNMENT, LAKE COUNTY SUPERIOR COURT, and JUDGE THOMAS P. STEFANIAK, JR., <br><br> Defendant. | CAUSE NO.: 2:18-CV-351-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [ECF No. 82] filed by Defendants Lake County Superior Court and Judge Thomas P. Stefaniak, Jr. and the Motion for Summary Judgment [ECF No. 84] filed by Defendant Lake County Government, both of which are fully briefed and ripe for ruling. For the reasons set forth below, the Court grants summary judgment in favor of all Defendants.

**PROCEDURAL BACKGROUND**

On March 11, 2019, Plaintiff Jamie Badanish filed a Second Amended Complaint [ECF No. 37] against Defendants Lake County Superior Court, Judge Thomas P. Stefaniak, Jr.—Senior Judge in that Division, and Lake County Government. The Plaintiff brings claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., and under Indiana state law. Under Title VII, the Plaintiff asserts claims of gender discrimination and retaliation. Second Am. Compl. at 8–10. The Plaintiff alleges that the Defendants fired her based on her sexual orientation and in retaliation for a prior Title VII gender discrimination complaint she filed against Lake County Government. *Id.* The Plaintiff is also asserting a defamation claim under

Indiana state law. *Id.* at 10. The Plaintiff alleges that the Defendants and their employees made false and malicious statements regarding her firing that defamed her. *Id.*

On March 18, 2019, Defendant Lake County Government filed a motion to dismiss for failure to state a claim. ECF No. 38. On April 5, 2019, Defendants Lake County Superior Court and Judge Stefaniak also filed a motion to dismiss for failure to state a claim. ECF No. 42. On May 20, 2020, the Court denied both motions to dismiss. ECF No. 48. On August 16, 2021, following the close of discovery, the Defendants filed the two pending motions for summary judgment. ECF Nos. 82, 84.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the

evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**FACTUAL BACKGROUND**

**A.     The Plaintiff's Initial Termination**

The Plaintiff worked as an employee at the Lake County Juvenile Detention Center (Center). Def. Ex. A, Badanish Dep. 7, ECF No. 82-1. The Plaintiff identifies as a lesbian. *Id.* at 113. In approximately 2014, the Plaintiff worked as Head of the Resident Supervision Department. *Id.* at 143. Mark Price served as the Center's Chief Deputy. *Id.* at 137. Price told others that, in relation to his religious background as a Jehovah's Witness, he did not believe in homosexuality. *Id.* at 138. Price would sometimes answer the phone with, "Hi, Homo." *Id.* at 139. Price never made these comments to the Plaintiff. *Id.* at 138–39. The Plaintiff heard that Price did not like the way the Plaintiff dressed, and Price instituted a dress code, requiring uniforms, that applied to everyone. *Id.* at 139–41. The Plaintiff also heard that another employee, Brett Burkholder, made anti-gay comments toward her. *Id.* at 112–13, 115, 141–42.

Defendant Judge Thomas P. Stefaniak, Jr. is the Senior Judge at the Lake County Superior Court, Juvenile Division, which operates the Center. Def. Ex. D, Stefaniak Decl. ¶ 2, ECF No. 82-4. In October 2014, Judge Stefaniak terminated the Plaintiff's employment with the Center. Def. Ex. B, Stefaniak Dep. 26, ECF No. 82-2. Judge Stefaniak explained that he removed her because of a complaint he received from Burkholder about a mishandled incident in which a child was transported naked to the Center. *Id.* at 35–36, 40.

Following her termination, the Plaintiff filed a lawsuit with this Court under Cause No. 4:15-CV-57, alleging gender discrimination under Title VII of the Civil Rights Act of 1964. Settlement Agreement, ECF No. 44-4. Judge Stefaniak looked further into the incident leading to the Plaintiff's termination and found that Burkholder's account was contradicted by a second witness. Stefaniak Dep. at 56. Judge Stefaniak realized he made a mistake and asked the Center's attorney to rehire the Plaintiff. *Id.* The parties settled the federal lawsuit, *see* Settlement Agreement, and the Plaintiff was re-employed, this time as a Training and Compliance Officer, *see* Badanish Dep. at 7.

**B.      The Plaintiff's Second Termination**

From the time of the Plaintiff's rehiring, she was "essentially promoted at the Center throughout [her] tenure there." *Id.* at 142. The Plaintiff began her new role on November 16, 2015, earning $5,000 a year more than she did in her former role. *Id.* at 7, 14. In approximately Fall 2016, Judge Stefaniak and Tim Gericke asked the Plaintiff to serve as acting Assistant Director after the former Assistant Director was demoted. *Id.* at 13–15. Later, in May 2017, the Plaintiff was made permanent Assistant Director, earning $10,000 more than in her role as a Training and Compliance Officer. *Id.* at 14, 16.

During this second employment period, the Plaintiff did not have any substantive interactions with Judge Stefaniak. *Id.* at 18. Judge Stefaniak did not make any anti-gay aspersions against her. *Id.* at 117, 133–34, 136. Price, the Chief Deputy who said he did not believe in homosexuality and answered the phone with, "Hi, Homo," left the Center before the Plaintiff was rehired. *Id.* at 112. The Plaintiff testified that Judge Stefaniak told her that Burkholder made untrue statements about her; the Plaintiff understood Burkholder's comments to have been bigoted but was unsure about the exact comments. *Id.* at 135.

On January 29, 2016, just over two months after being rehired, the Plaintiff signed a document acknowledging her receipt of the Lake County Juvenile Court Employee Handbook. Def. Ex. G, Employee Acknowledgement Form, ECF No. 82-7. By signing the document, the Plaintiff acknowledged that she was an "at will" employee who could "be terminated at any time other than for any Title VII reasons." *Id.* The Handbook describes a series of progressive disciplinary measures for misconduct, but states that "the Senior Judge and Chief Deputy may conclude the employee's conduct justifies immediate discharge. The Senior Judge and Chief Deputy have no obligation to use any of these forms of discipline before discharging an employee." Def. Ex. E, Discipline Policy, ECF No. 82-5. The Handbook also includes a non-exhaustive list of infractions that could result in disciplinary action, including termination. Def. Ex. F, Employee Conduct & Work Rules, ECF No. 82-6. The list of infractions includes:

> 16. Unauthorized use of telephones, mail system, or other Juvenile Division or Lake County-owned equipment;
>
> 17. Unauthorized disclosure of confidential information that is not a matter of public record will result in disciplinary action, up to and including termination . . . .

*Id.* at 3.

On May 23, 2016, at Judge Stefaniak's direction, a Memorandum was sent to all Center staff regarding the review of video surveillance coverage. Stefaniak Decl. at ¶¶ 7–8. Judge Stefaniak instituted the policy in response to rumors that the person in charge of video surveillance would let anyone who asked watch it. Stefaniak Dep. at 81. He stated that the purpose of the letter was to "make sure that only authorized people were viewing the video surveillance with approval of the management." *Id.* The Memorandum states:

> No one is authorized to review video surveillance coverage with the exception of the following individuals:
>
>   1. Senior Judge, Thomas P. Stefaniak, JR.

5

>   2. Chief Deputy, Tim Gericke
>   3. Court Executive, Lynette A. Jones
>   4. Director of Detention Services, Geraldine Giglio
>   5. Assistant Director of Detention Services, Dan Arendas
>
> An Administrator whose area is impacted or has an employee named in an investigation is authorized to review surveillance coverage concerning that particular occurrence.
>
> All requests to review surveillance coverage must be made in writing to the Director of Detention Services, Geraldine Giglio. No one is to approach Julie Kelly-Lawless directly about reviewing surveillance coverage.
>
> Failure to comply with these procedures will result in disciplinary action.

Def. Ex. H, Surveillance Mem., ECF No. 82-8.

In late May 2017, the Plaintiff arrived at work and Kelly-Lawless—the custodian of video surveillance coverage—entered her office. Badanish Dep. at 21, 25. They discussed an email informing all staff members that Magistrate Hollandsworth had been terminated. *Id.* at 25. The Plaintiff commented that she wondered who had escorted Magistrate Hollingsworth out of the Center because the Plaintiff had been terminated and escorted out in the past. *Id.* at 59–60.

After that conversation, Leesa Harris, the Center's therapist, joined the Plaintiff and Kelly-Lawless in the Plaintiff's office. *Id.* at 27–28. Harris asked to see video of a resident who was on suicide watch. *Id.* at 28. She was concerned that Geraldine Giglio had not followed her directive to put the resident on suicide watch. *Id.* at 34. The Plaintiff then asked Kelly-Lawless to pull up the requested video of the resident on suicide watch. *Id.* at 38. The Plaintiff believed that she had authority to approve or disapprove the viewing of surveillance videos. *Id.* at 37, 103. Harris did not ask Giglio for approval to see the video, as directed by the Memorandum. Def. Ex. C, Harris Dep. 40, ECF No. 82-3. Nor did the Plaintiff submit a written request to Giglio for approval to view the video. Badanish Dep. at 103. Kelly-Lawless left the Plaintiff's office, came back shortly after, and said the video was ready to view. *Id.* at 38.

6

The first thing the Plaintiff saw on the video monitor was not footage of the resident on suicide watch, but the bailiff escorting Magistrate Hollandsworth out of the building. *Id.* at 47–48. The three staff members watched the video for two to three minutes. *Id.* at 52.

When asked if it would ever have been reasonable for her to watch the magistrate as the target of the surveillance, the Plaintiff answered "No." *Id.* at 71. She stated that judicial officers were not under her supervision or in her chain of command. *Id.* She agreed that the video did not involve an investigation in Detention Services. *Id.* at 82. And she affirmed that nothing in the video created a safety concern. *Id.* at 83.

Later, Judge Stefaniak received an anonymous complaint that the Plaintiff, Kelly-Lawless, and Harris inappropriately viewed a security tape. Stefaniak Dep. at 62. He directed an investigation into the incident. *Id.* at 64. He sent three members of his management team to talk to the Plaintiff, Kelly-Lawless, and Harris simultaneously and report back. *Id.* The investigators reported that the Plaintiff, Kelly-Lawless, and Harris viewed tape of the judicial officer retrieving her personal items because the Plaintiff wanted to compare the judicial officer being escorted out of the building to her own experience. *Id.* at 65. On June 2, 2017, as a result of his findings, Judge Stefaniak decided to fire all three of them. *Id.* at 61, 65. When asked what about this incident required him to fire them, Judge Stefaniak answered, "There's no reason to view a security tape for personal reasons, and it violated our policy." *Id.* at 66.

**ANALYSIS**

In support of their Motion for Summary Judgment on the Plaintiff's Title VII claims, Defendants Lake County Superior Court and Judge Thomas P. Stefaniak, Jr. argue that Judge Stefaniak fired the Plaintiff because she viewed surveillance footage in violation of the Memorandum, not because of gender discrimination or in retaliation for her prior protected

7

activity. The Plaintiff responds that she was fired because she is a lesbian and the proposed reason that she did not have authority to view the video is pretextual. Regarding the Plaintiff's defamation claim, the Defendants argue the Plaintiff's claim is barred because the Plaintiff did not file a timely notice as required by Indiana's Tort Claims Act, Ind. Code § 34-13-3-6. As for Defendant Lake County Government, the Plaintiff named it as a defendant only for purposes of indemnification if she recovers against Defendants Lake County Superior Court and Judge Stefaniak. Thus, the Plaintiff's claims against Defendant Lake County Government are dependent on her ability to establish a claim against Defendants Lake County Superior Court and Judge Stefaniak. Accordingly, the Court considers the arguments made by Defendants Lake County Superior Court and Judge Stefaniak on the merits of her claims as applicable to all three Defendants.[1]

### A.  Title VII Gender Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of her sex. 42 U.S.C. § 2000e-2(a)(1). As the Seventh Circuit stated in *Ortiz v. Werner Enterprises*, the Court in a Title VII case asks whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . .

---

[1] Lake County Government filed a separate Motion for Summary Judgment [ECF No. 84] in which it argues that it is not the Plaintiff's employer under Indiana law and, therefore, cannot be liable to the Plaintiff under Title VII. The Plaintiff maintains the position that Lake County Government is her employer insofar as it controls the Center. The Court does not reach the issue whether Lake County Government is the Plaintiff's employer because the Plaintiff has failed to present a genuine issue of material fact on her substantive legal claims under Title VII and Indiana law. In the absence of any viable legal claims, there is no basis to hold Lake County Government liable for exercising control over the Center. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of the moving defendants or where the claims against all defendants are integrally related."); *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994) ("A district judge is authorized to grant summary judgment to a party that has not requested it . . . .").

caused the discharge." 834 F.3d 760, 765 (7th Cir. 2016).[2] And, "[i]n adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has not produced sufficient evidence to support a jury verdict that would attribute the Plaintiff's firing to sex discrimination. The Plaintiff received reports of, but never herself experienced, discriminatory behavior exhibited by two employees, Mark Price and Brett Burkholder. Judge Stefaniak never made any discriminatory comments to her. The Plaintiff argues that Judge Stefaniak tolerated a hostile work environment created by Price and Burkholder, but the Plaintiff fails to offer evidence that their sentiments influenced Judge Stefaniak's decision to fire her. Moreover, Price had left the Center by the time the Plaintiff was rehired in 2016. Assuming that Burkholder, as the Plaintiff suggests, shared his anti-gay sentiments with Judge Stefaniak, the Plaintiff has presented no evidence that Judge Stefaniak acted on Burkholder's sentiments. Although Judge Stefaniak listened to Burkholder when he decided to fire the Plaintiff the first time, there is no similar evidence that Judge Stefaniak did so here. Unlike the Plaintiff's first firing, during which Judge Stefaniak relied solely on Burkholder's account, here Judge Stefaniak directed an investigation into the Plaintiff's violation of the Memorandum and received three separate reports from members of his management team.

---

[2] Defendants Lake County Superior Court and Judge Stefaniak argue for summary judgment under both the standard outlined in *Ortiz*, as well as the standard outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Plaintiff, however, presents her argument solely in terms of the *Ortiz* framework. The Court therefore employs that construct to address the Defendants' motion. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957–58 (7th Cir. 2021) ("[A] plaintiff need not use the *McDonell Douglas* framework after *Ortiz*. At summary judgment, '[w]hat matters is whether [a plaintiff] presented enough evidence to allow the jury to find in [her] favor.'" (quoting *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020))).

Not only has the Plaintiff produced no evidence to suggest that Judge Stefaniak acted on Burkholder's sentiments, but the Plaintiff agrees that she was "essentially promoted at the Center throughout [her] tenure there." When she was hired as a Training and Compliance Officer in 2016, the Plaintiff made $5,000 a year more than she did in her prior position as Head of the Resident Supervision Department. In Fall 2016, she was promoted to acting Assistant Director of Detention Services. Later, she was made permanent Assistant Director of Detention Services, making $10,000 more than she did as a Training and Compliance Officer. When he made these decisions to promote the Plaintiff, Judge Stefaniak knew her sexual orientation, either from her past employment or from the Title VII lawsuit she previously filed against the Center. The Plaintiff has offered no evidence to create an inference that her sexual orientation, which did not preclude her promotions, would have suddenly motivated Judge Stefaniak to terminate her employment.

The Plaintiff contends that Judge Stefaniak's stated reason for firing her—that she violated the Memorandum on viewing surveillance footage—is pretextual. "To show pretext, a plaintiff 'must do more than simply allege that an employer's stated reasons are inaccurate; [s]he must still have some circumstances to support an inference that there was an improper motivation proscribed by law.'" *Tyburski v. City of Chicago*, 964 F.3d 590, 599 (7th Cir. 2020) (quoting *Benuzzi v. Bd. of Educ. of the City of Chi.*, 647 F.3d 652, 663 (7th Cir. 2011)); *see also Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478–79 (7th Cir. 2010) ("To demonstrate pretext, [the Plaintiff] must show that her employer did not honestly believe in the reasons it gave for terminating her.").

The Plaintiff argues that her violation of the Memorandum cannot justify her firing because the Memorandum gave her authority, through her position, to view the footage. But the

evidence shows that Judge Stefaniak maintained an honest belief that the Plaintiff violated the Memorandum. When asked what about this incident required him to fire the three staff members, Judge Stefaniak said, "[t]here's no reason to view a security tape for personal reasons, and it violated our policy." The Memorandum authorized administrators to review footage if their "area is impacted or [they have] an employee named in an investigation." Judge Stefaniak's investigators reported to him that the Plaintiff viewed the tape because she wanted to compare the judicial officer being escorted out of the building to her own experience. The Plaintiff later testified that judicial officers were not under her supervision or in her chain of command; she agreed that the video did not involve an investigation in Detention Services; and she affirmed that nothing in the video created a safety concern, all of which would have been known to Judge Stefaniak as Senior Judge of the Lake County Superior Court, which operates the Center.

After investigating whether the three staff members viewed the surveillance footage in violation of the Memorandum, Judge Stefaniak fired all three of them. The Plaintiff argues that Judge Stefaniak fired Harris and Kelly-Lawless as a cover up so he could avoid a Title VII claim such as this one. But Judge Stefaniak believed that Harris and Kelly-Lawless also violated the Memorandum, and the Plaintiff does not offer evidence to show that Judge Stefaniak did not hold this honest belief.

The Plaintiff has produced no evidence that Judge Stefaniak took her sexual orientation into consideration when deciding to fire her and has failed to demonstrate that his stated explanation was a pretext for discrimination. The Court thus concludes that a reasonable factfinder could not attribute the Plaintiff's firing to sex discrimination and grants summary judgment in favor of all Defendants on the Plaintiff's Title VII discrimination claim.

**B.     Title VII Retaliation**

The Plaintiff also claims that the Defendants fired her in retaliation for filing a lawsuit under Title VII after her first firing in 2014. Under Title VII, an employer is prohibited "from retaliating against an employee for opposing or participating in an investigation of an unlawful employment practice." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). To survive summary judgment on this claim, the Plaintiff must show (1) that she engaged in a statutorily protected activity, (2) that she suffered a materially adverse action taken by the employer, and (3) a causal connection between the two. *Id.* at 866–67 (citing *Lord*, 839 F.3d at 563). The Court must "evaluate the evidence as a whole to determine if it 'would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Id.* at 867 (quoting *Ortiz*, 834 F.3d at 764–65).[3]

The Plaintiff points to her earlier Title VII lawsuit as a statutorily protected activity and to her termination as a materially adverse action. The Plaintiff has not, however, alleged facts or provided evidence to demonstrate a causal connection between the two. As cited by the Defendants, "the question for a retaliation claim should always be: 'Does the record contain sufficient evidence to permit a reasonable factfinder to conclude that retaliatory motive caused the discharge?'" *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (quoting *Lord*, 839 F.3d at 563).

---

[3] Although the *McDonnell Douglas* burden-shifting framework also remains available to a plaintiff opposing summary judgment on a Title VII retaliation claim, *Lewis*, 909 F.3d at 866–67, the Plaintiff proceeds solely under the evidence as a whole.

Although the Plaintiff's complaint did not allege facts to support her retaliation claim, the Defendants preemptively dispute that the timing between the first lawsuit and the Plaintiff's second firing creates a causal connection between the two. The Court agrees that the eighteen-month gap between the Plaintiff's rehiring in 2015—which occurred because of the Plaintiff's initial lawsuit—and her termination in 2017 cannot support a claim of retaliation. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action."); *Igasaki*, 988 F.3d at 959 (rejecting the argument that a two-month gap between the plaintiff's protected activities and his termination could show retaliation on its own); *cf. Lord*, 839 F.3d at 564 (drawing a causal connection from a two-day period between the plaintiff's protected activity and termination).

In response to summary judgment on this claim, the Plaintiff renews her argument that she had authority to view the surveillance video. Since she had the requisite authority, the Plaintiff contends, the Defendants can show no good reason for her second firing—evidence that she was fired in retaliation for her first lawsuit. As explained above, however, the Memorandum outlined conditions for viewing surveillance footage that the Plaintiff did not meet, and the Plaintiff has not shown that Judge Stefaniak did not honestly base his decision to fire her on this violation. Beyond that argument, the Plaintiff has provided no evidentiary support for her retaliation claim. The Plaintiff "must provide more than [her] mere assertions to defeat summary judgment, especially when" her behavior provided the Defendant "with a nondiscriminatory rationale for [her] termination." *Igasaki*, 988 F.3d at 960. Accordingly, the Court grants summary judgment in favor of all Defendants on the Plaintiff's Title VII retaliation claim.

C. **Defamation**

The Plaintiff brings an Indiana state law defamation claim against the Defendants for allegedly making false and malicious statements related to her firing. The Defendants argue that the claim is barred because the Plaintiff failed to timely file a notice under the Indiana Tort Claims Act. As a threshold matter, the Plaintiff must satisfy certain procedural requirements to bring a tort claim against the Defendants, who are Indiana governmental entities and a public employee. *See* Ind. Code § 34-13-3-6. Specifically, "a claim against the state is barred unless" the Plaintiff files notice with "the attorney general or the state agency involved." *Id.*; *see also* Ind. Code § 34-13-3-8 ("[A] claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission created under IC 27-1-29 . . . ."). The Plaintiff has not shown that she filed the required notices. Accordingly, the Plaintiff's defamation claim is barred, and the Court grants summary judgment in favor of all Defendants on the claim.

**CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS the Motion for Summary Judgment [ECF No. 82] filed by Defendants Lake County Superior Court and Judge Thomas P. Stefaniak, Jr. and GRANTS, but for reasons different than requested, the Motion for Summary Judgment [ECF No. 84] filed by Defendant Lake County Government. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendants Lake County Superior Court, Judge Thomas P. Stefaniak, Jr., and Lake County Government and against the Plaintiff Jamie Badanish.

SO ORDERED on September 28, 2022.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT